IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| JACOB MILLER, both individually and on behalf of a class of others similarly situated, DANIEL MILLER, DONALD ANDERSON, ERIN HATFIELD, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Case No. 06-1731-KI |
| vs. | ) ) ) | OPINION AND ORDER |
| YAMHILL COUNTY, JACK CRABTREE, both individually and in his official capacity as Sheriff, | ) ) ) ) | |
| Defendants. | ) ) | |

Leonard Randolph Berman
4711 SW Huber Street, Suite E-3
Portland, Oregon 97219

Attorney for Plaintiffs

Page 1 - OPINION AND ORDER

Steven A. Kraemer
Jason A. Gardner
Hoffman Hart & Wagner, LLP
1000 SW Broadway, 20th Floor
Portland, Oregon  97205

    Attorneys for Defendants

KING, Judge:

Plaintiffs Jacob Miller, Daniel Miller, Donald Anderson and Erin Hatfield bring a putative class action against defendants Yamhill County and Sheriff Jack Crabtree alleging that defendants' policy of strip searching inmates at the Yamill County Correction Facility ("YCCF") without reasonable suspicion that they are carrying contraband or weapons is a violation of the Fourth Amendment.  Plaintiffs also allege the County's policy applies to those charged with misdemeanors, violations, traffic infractions, civil commitments or other minor crimes.  Before me is defendant's Motion for Summary Judgment (#53).  For the following reasons, I grant the motion.

## BACKGROUND

The written policy of the Yamhill County Sheriff's Office, which is set forth in Chapter 608 of the Yamhill County Corrections Facility Policy Manual, calls for a strip search:

1. Upon arrival from any State of Oregon Corrections Division Institute.

2. Upon the inmate reporting to serve a sentence.

3. Upon arrival from another jurisdiction, but only when the inmate was lodged in a correctional facility prior to entering the Yamhill County Corrections Facility.

4. Upon the inmate returning from outside the security perimeter of the Yamhill County Corrections Facility when not supervised by staff.

Page 2 - OPINION AND ORDER

       5.       Upon return from staff supervised trips outside the security perimeter of the Yamhill County Corrections Facility upon the discretion of the supervising deputy.

       6.       By any deputy at any time when a reasonable suspicion exists that the inmate may possess weapons, contraband, or has injuries that may require immediate medical attention.

       7.       Whose charges involve violence, weapons, drugs, or other serious felonies.

       8.       As part of a cell shakedown.

       9.       If the inmate is received on violation of probation or parole.

Gardner Aff. Ex. 1.

Ron Huber, the Jail Commander for Yamhill County, describes the County's strip search procedure as follows:

> All of the unclothed body searches are conducted in a manner that affords the individual being searched a reasonable amount of privacy. Further, the period of time when the person is completely unclothed is no longer than is reasonably necessary to complete the search. Only male corrections officers are permitted to observe or participate in the unclothed body search of male arrestees or inmates and only female corrections officers are permitted to observe or participate in the unclothed body search of female arrestees or inmates. When a person is subject to an unclothed body search they are not touched by the corrections officer.

Huber Aff. ¶ 8.

I.    <u>Jacob Miller</u>

Though plaintiffs originally challenged several strip searches of Jacob Miller, only one of the strip searches of Jacob Miller remains before the court.

Plaintiffs are no longer challenging the circumstances of the strip search of Jacob Miller following his Disorderly Conduct and Escape III arrest on June 7, 2006.

Page 3 - OPINION AND ORDER

Jacob Miller was arrested again on July 12, 2007 on charges of Menacing and Disorderly Conduct. He was booked by Deputy Marie Sutter, who learned from the arresting officer that Jacob Miller was arrested for threatening someone with a knife and cane. Deputy Sutter made the determination that Jacob Miller should be strip searched and plaintiffs are no longer challenging this decision. Yamhill County released Jacob Miller to a treatment program and ordered that he return to custody upon completion of the program. When Jacob Miller returned to YCCF on September 5, 2007, Deputy Alberto Contreras strip searched him on the basis that Jacob Miller was out of custody knowing he would be returning to custody. Plaintiffs continue to challenge this strip search.

II.     Daniel Miller

Plaintiff Daniel Miller challenges several strip searches of his person on various dates.

Officers arrested Daniel Miller on March 28, 2005 for Driving While Suspended and the felony of Attempt to Elude. Deputy Mike Brooks strip searched Daniel Miller after booking because he was a "sentenced inmate or had prior knowledge of being housed." Brooks Aff. ¶ 4. Deputy Brooks came to this conclusion because Daniel Miller had successfully eluded police earlier in the day he was arrested. In other words, Daniel Miller knew police were looking for him and that it was likely he would be entering the jail. Daniel Miller claims he never eluded police, used drugs, weapons or violence, and therefore did not need to be strip searched.

Officers arrested Daniel Miller again on February 26, 2007 for Resisting Arrest. He was strip searched because he had acted in a violent manner during his arrest and because he had a previous felony conviction for an "offense involving Assault/Violence." Gardner Aff. Ex. 20. In order to effectuate Daniel Miller's arrest, the arresting officer had to deploy his tazer. Daniel

Page 4 - OPINION AND ORDER

Miller claims he was never physically assaultive or violent and that he has no previous conviction involving assault or violence.

When Daniel Miller appeared at the jail on March 30, 2007 to serve a probation sanction, officers concluded a strip search was appropriate because he was a "sentenced inmate or had prior knowledge of being housed." Gardner Aff. Ex. 23. Plaintiffs have abandoned this claim.

Daniel Miller was arrested on three subsequent occasions: May 17, 2007, June 1, 2007, and March 31, 2008. Defendants assert Daniel Miller was not strip searched for any of these arrests and provide the jail "classification addendum" form indicating that he was not strip searched. Daniel Miller asserts he believes he was strip searched on June 1, 2007 and on March 31, 2008, but has abandoned any claim regarding the May 17, 2007 arrest.

Thus, four strip searches of Daniel Miller remain before the court.

III.  Donald Anderson

Donald Anderson was arrested on September 18, 2005, on felony charges of Burglary I and Theft I. Anderson had prior felony convictions for Escape II and Attempted Use of a Dangerous Weapon. Anderson was strip searched by Deputy David Lux because of Anderson's prior convictions. Lux Aff. ¶ 4. Plaintiffs have conceded the strip search of Anderson was proper.

IV.  Erin Hatfield

Erin Hatfield was arrested on August 11, 2008 for Driving Under the Influence of Intoxicants ("DUII"). The arresting officer placed Hatfield in handcuffs. During booking, Hatfield removed her hands from the handcuffs and hid the handcuffs in her underwear. Officers asked Hatfield several times where the handcuffs were. She told them she had taken them off in

Miller claims he was never physically assaultive or violent and that he has no previous conviction involving assault or violence.

When Daniel Miller appeared at the jail on March 30, 2007 to serve a probation sanction, officers concluded a strip search was appropriate because he was a "sentenced inmate or had prior knowledge of being housed." Gardner Aff. Ex. 23. Plaintiffs have abandoned this claim.

Daniel Miller was arrested on three subsequent occasions: May 17, 2007, June 1, 2007, and March 31, 2008. Defendants assert Daniel Miller was not strip searched for any of these arrests and provide the jail "classification addendum" form indicating that he was not strip searched. Daniel Miller asserts he believes he was strip searched on June 1, 2007 and on March 31, 2008, but has abandoned any claim regarding the May 17, 2007 arrest.

Thus, four strip searches of Daniel Miller remain before the court.

III.  Donald Anderson

Donald Anderson was arrested on September 18, 2005, on felony charges of Burglary I and Theft I. Anderson had prior felony convictions for Escape II and Attempted Use of a Dangerous Weapon. Anderson was strip searched by Deputy David Lux because of Anderson's prior convictions. Lux Aff. ¶ 4. Plaintiffs have conceded the strip search of Anderson was proper.

IV.  Erin Hatfield

Erin Hatfield was arrested on August 11, 2008 for Driving Under the Influence of Intoxicants ("DUII"). The arresting officer placed Hatfield in handcuffs. During booking, Hatfield removed her hands from the handcuffs and hid the handcuffs in her underwear. Officers asked Hatfield several times where the handcuffs were. She told them she had taken them off in

the back of the patrol car. Officers unsuccessfully searched the booking area and patrol car and then ordered Hatfield to step into the dressing area and remove her clothing. Hatfield then produced the handcuffs from her underwear. Deputy Tamara Hart concluded that a strip search was necessary as she was concerned Hatfield may have hid other items in her pants. Officers then charged Hatfield with Theft III.

Hatfield says she acted "in jest" and the handcuffs were "retrieved without incident . " Hatfield Aff. Ex. 4. She also claims she was not searched until the following day after having been handcuffed to a chair through the night. Hatfield Aff. Ex. 4.

## LEGAL STANDARDS

I.      Summary Judgment

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that an issue of fact remains to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

II.     Constitutionality of Strip Searches

The Supreme Court established a balancing test for the constitutionality of strip searches in Bell v. Wolfish, 441 U.S. 520 (1979). The court must balance "the need for the particular search against the invasion of personal rights that the search entails," which requires considering

Page 6 - OPINION AND ORDER

"the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id. at 559. The standard is less stringent than probable cause. Id. at 560. Since the Bell decision, the Ninth circuit has established that while blanket strip searches of individuals arrested for misdemeanor and other minor crimes are prohibited, searches of arrestees charged with minor offenses may be warranted if jail officials have a "reasonable suspicion" that the arrestee is carrying or concealing contraband. Giles v. Ackerman, 746 F.2d 614, 615-17 (9th Cir. 1984) (per curiam) (overruled on other grounds by Hodgers-Durgin v. de la Vina, 199 F.3d 1037 (9th Cir. 1999) (en banc)); Edgerly v. City of San Francisco, 495 F.3d 645 (9th Cir. 2007). Reasonable suspicion exists when the officer responsible for the search is aware of specific articulable facts and inferences from those facts, that warrant a suspicion that contraband will be recovered. Kirkpatrick v. City of Los Angeles, 803 F.2d 485, 490 (9th Cir. 1986).

## DISCUSSION

I.     Liability of Sheriff Crabtree

Defendants have moved for summary judgment as to the claims against Sheriff Jack Crabtree on the basis of qualified immunity. The claims against Sheriff Crabtree are based entirely on his role as supervisor of the deputies who conducted the searches at issue. However, a "supervisor may be liable under § 1983 only if there exists either ' "(1) his or her personal involvement in the constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" Jeffers v. Gomez, 267 F.3d 895 (9th Cir. 2001) (citations omitted) (emphasis in original). Sheriff Crabtree was not personally involved in any of the searches at issue in this case, nor have plaintiffs established a sufficient

Page 7 - OPINION AND ORDER

causal connection between any conduct of Sheriff Crabtree and the alleged violations. Therefore, summary judgment is granted as defendant Crabtree.

II.     Search of Jacob Miller

As discussed above, the only strip search of Jacob Miller still before the court is the September 5, 2007 search. On that date, Jacob Miller self-reported to YCCF after completing a drug treatment program. Mosiman Aff. ¶ 5. In Mr. Miller's own affidavit he states "I, therefore, was out of custody with knowledge that I would be returning to custody on a certain date from the community." Miller Aff. ¶ 5. Unlike a normal arrest, which involves the element of surprise, Jacob Miller had the time and the means to prepare for his return to custody and could smuggle weapons or contraband into custody. Furthermore, in Jacob Miller's case, he had been in custody several times before and knew what the jail's policies and practices were so that he could even better prepare to circumvent the jail's precautions.

Moreover, the Sixth Circuit held a strip search of an individual charged with menacing was justified because "[m]enacing is an offense that is associated with weapons, and may well raise reasonable suspicion on the part of the jail officials that a person detained on that charge may be concealing weapons or other contraband." Dobrowolskj v. Jefferson, 823 F.2d 955, 958-59 (6th Cir. 1987), cert. denied, 484 U.S. 1059, 108 S. Ct. 1012 (1988). The Ninth Circuit favorably cited Dobrowolskj in holding that a strip search of a person charged with Grand Theft Auto, who would come into contact with the general jail population, was valid because the charge was "sufficiently associated with violence to justify a visual strip search," even when the specific incident did not involve violence. Thompson v. City of Los Angeles, 885 F.2d 1439, 1447 (9th Cir. 1989). Together, the underlying menacing charge, the fact that Jacob Miller was

returning to the jail at the time of his choosing and therefore had knowledge that he would be entering the jail, and the fact that he was returning from a drug treatment facility because of his possession and use of contraband, made the search of Jacob Miller upon his entry into the general jail population reasonable. Summary judgment is granted as to the search of Jacob Miller.

III.     Searches of Daniel Miller

As an initial matter, defendants argue that the statute of limitations bars the claim regarding the March 28, 2005 search of Daniel Miller. The two-year statute of limitations as set forth in ORS 12.110 applies. Sain v. City of Bend, 390 F.3d 1134, 1139 (9th Cir. 2002). However, the Supreme Court held in American Pipe & Construction Co. v. Utah: "the commencement of the action satisfie[s] the purpose of the limitation provision as to all those who might subsequently participate in the suit as well as for the named plaintiffs." 414 U.S. 538, 551 (1974). The Court was clear: "even as to asserted class members who were unaware of the proceedings brought in their interest or who demonstrably did not rely on the institution of those proceedings, the later running of the statute of limitations does not bar participation in the class action and in its ultimate judgment." Id. at 552. Thus, the filing of the class action on December 1, 2006 tolled the statute of limitations, not just to plaintiff Jacob Miller, but also to the other later identified plaintiffs, including Daniel Miller. Therefore, the March 28, 2005 search was within the applicable two year statute of limitations.

The March 28, 2005 arrest was on charges of Driving While Suspended and the felony of Attempt to Elude. Gardner Aff. ¶ 17, Ex. 15, ¶ 18, Ex. 16. Deputy Mike Brooks conducted a strip search of Daniel Miller because he was a "sentenced inmate or had prior knowledge of being housed." Brooks Aff. ¶ 4. Plaintiffs' claim is based on the allegation that YCCF has a

Page 9 - OPINION AND ORDER

returning to the jail at the time of his choosing and therefore had knowledge that he would be entering the jail, and the fact that he was returning from a drug treatment facility because of his possession and use of contraband, made the search of Jacob Miller upon his entry into the general jail population reasonable. Summary judgment is granted as to the search of Jacob Miller.

III.     Searches of Daniel Miller

As an initial matter, defendants argue that the statute of limitations bars the claim regarding the March 28, 2005 search of Daniel Miller. The two-year statute of limitations as set forth in ORS 12.110 applies. Sain v. City of Bend, 390 F.3d 1134, 1139 (9th Cir. 2002). However, the Supreme Court held in American Pipe & Construction Co. v. Utah: "the commencement of the action satisfie[s] the purpose of the limitation provision as to all those who might subsequently participate in the suit as well as for the named plaintiffs." 414 U.S. 538, 551 (1974). The Court was clear: "even as to asserted class members who were unaware of the proceedings brought in their interest or who demonstrably did not rely on the institution of those proceedings, the later running of the statute of limitations does not bar participation in the class action and in its ultimate judgment." Id. at 552. Thus, the filing of the class action on December 1, 2006 tolled the statute of limitations, not just to plaintiff Jacob Miller, but also to the other later identified plaintiffs, including Daniel Miller. Therefore, the March 28, 2005 search was within the applicable two year statute of limitations.

The March 28, 2005 arrest was on charges of Driving While Suspended and the felony of Attempt to Elude. Gardner Aff. ¶ 17, Ex. 15, ¶ 18, Ex. 16. Deputy Mike Brooks conducted a strip search of Daniel Miller because he was a "sentenced inmate or had prior knowledge of being housed." Brooks Aff. ¶ 4. Plaintiffs' claim is based on the allegation that YCCF has a

Page 9 - OPINION AND ORDER

blanket strip search policy for persons arrested for "misdemeanors, violations, violations of probation or parole, traffic infractions, civil commitments or other minor crimes." This search does not fit within plaintiffs' own definition of the class. Here, one of the charges was a felony. Moreover, Daniel Miller had eluded arrest earlier in the day, and therefore knew that the police were looking for him and that he would likely be entering the jail population. Brooks Aff. ¶ 5. Plaintiff's reliance on Houston v. Washington County et. al., CV-06-1123-ST is misplaced. Houston is distinguishable from this case. I hold the search of Daniel Miller on March 28, 2005 was reasonable.

Daniel Miller was also arrested on February 26, 2007 on a Resisting Arrest charge. The arresting officer used a tazer in the course of the arrest. Reid Aff. ¶ 4. Deputy Steve Reid determined an unclothed search of Daniel Miller's person was necessary because his arrest involved physically abusive or violent behavior. Reid Aff. ¶ 4; Gardner Aff. Ex. 20. Additionally, Deputy Reid noted that Daniel Miller had a previous felony conviction for an offense involving Assault/Violence. Id. Daniel Miller's denial that he was acting violently does not raise a fact issue because he was charged with Resisting Arrest. I find the February 26, 2007 strip search based on the Resisting Arrest charge, a charge that involves violence, was reasonable.

Mr. Miller was also arrested on June 1, 2007 for Driving While Suspended, and on March 31, 2008 pursuant to a bench warrant. YCCF maintains Mr. Miller was not strip searched on either of these dates. Mr. Daniel Miller continues to assert that he "believes" he was strip searched on both June 1, 2007 and March 31, 2008.

Daniel Miller has introduced no evidence to controvert the affidavit of Deputy Duane McCommons, the officer who booked Mr. Miller into custody on June 1, 2007, who states Mr. Miller was not strip searched on that date, nor the affidavit of Deputy Tamara Hart, the officer who booked Mr. Miller into custody on March 28, 2009, who likewise stated she did not strip search Mr. Miller.  Both officers also confirm that they completed the classification addendum form recording their decisions not to strip search Mr. Miller on the respective arrest dates.  The jail records indicate that Mr. Miller was not strip searched on either June 1, 2007, or March 21, 2008.  Mr. Miller merely asserts he "believes" he was strip searched on those dates.  This assertion does not establish a genuine issue of material fact.  See Witherow v. Paff, 52 F.3d 264, 266 (9th Cir. 1995).  "A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted).  "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  See Nelson v. Pima Community College, 83 F.3d 1081-82 (9th Cir. 1996) ('[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment'); Thornhill Pub. Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979)."  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  Summary judgement is therefore granted as to the June 1, 2007 and March 31, 2008 strip search claims.

IV.    Search of Donald Anderson

Plaintiffs have conceded the Summary Judgment Motion as to Donald Anderson.

V.      Search of Erin Hatfield

Erin Hatfield was arrested on August 11, 2008 on DUII charges. After her arrest she managed to remove and conceal her handcuffs in her underwear. After an extended search of the patrol car and booking area, and repeated denials that she had the handcuffs, Hatfield removed the handcuffs from her pants. A Theft III charge was added to the DUII charge. Deputy Tamara Hart concluded a strip search was necessary on the basis that Hatfield might be concealing other contraband. Hart Aff. ¶ 4. Hatfield was not searched on the basis of the misdemeanor charges on which she was booked. Hart Aff.¶ 7. I hold that the search of Ms. Hatfield was reasonable and grant summary judgment as to this search.

## CONCLUSION

Defendant's motion for summary judgement (#81) is therefore granted.

IT IS SO ORDERED.

Dated this       15th       day of May, 2009


           /s/ Garr M. King
           Garr M. King
           United States District Judge